## PURITY BISCUIT CO. et al. v. INDUSTRIAL COMMISSION et al.

No. 7096.  Decided January 17, 1949.  (201 P. 2d 961.)

See 71 Workmen's Compensation Acts, sec. 363; 58 Am. Jur. 786. Workmen's compensation; right to compensation in case of abnormal incident to specific injury, note, 156 A. L. R. 1344.

1

*Critchlow & Critchlow,* of Salt Lake City, for plaintiffs.

*Grover A. Giles* and *Herbert F. Smart,* both of Salt Lake City, for defendants.

WADE, Justice.

The plaintiffs, Purity Biscuit Company, the employer, and Liberty Mutual Insurance Company, the compensation insurance carrier, obtained this writ for a review of an Industrial Commission award of compensation and payment for medical attention to defendant R. Irwin Vincent an employee of the Biscuit Company.

There is no dispute in the evidence either on the facts as they occurred or on the cause of the injury. There is some question as to what inferences should be drawn from the known facts. At the time of the injury, Vincent had been employed by the biscuit company for a year and seven months as a delivery truck driver, and as such, his duties required him to lift as much as 70 pounds in taking the packages which were to be delivered from the truck to the places of business of his employers customers and in helping to load his truck in the warehouse. Thus his employment entailed some heavy lifting and in doing so at times constant stooping and bending of his back.

On March 14, 1947, while driving his truck east on 4th South Street in Salt Lake City, Utah, on his route making deliveries for his employer, as he approached 3d West Street he stopped for a stop sign by applying his foot to the brake. In starting, as he raised his foot from the brake pedal, he was seized with a violent pain in the small of his back and

down both legs. At first he was unable to move his legs but managed to drive the truck eastward for a distance of five blocks across State Street where, being unable to put his foot on the brake pedal, he drove into the curb and stopped at the Utah Oil Station at the intersection of 4th South and State Streets. There an attendant of the station called the biscuit company and he was picked up and taken to its plant and later to Dr. Okelberry's Salt Lake Clinic where Dr. Okelberry examined his back and legs and took X-ray pictures of his lumbar spine, then sent him to the L. D. S. Hospital where he remained until the 17th or 18th of March. When the Doctor first examined him, he was suffering severe pains in his back and his legs were paralyzed. On March 20th, Vincent returned to Dr. Okelberry who again examined him and found him greatly improved and without paralysis of the legs or acute pain. At that time the doctor recommended to Vincent and sold him a belt to wear around his waist, and advised him to avoid all work in the future which required any heavy lifting. Thereafter applicant asked the biscuit company for work not entailing heavy lifting but was told that they had no such work available for him, whereupon he enrolled in the L. D. S. Business College under the G. I. Bill of Rights which school he was attending at the time of the hearing.

Apparently the Industrial Commission found that the constant stooping and bending in lifting heavy packages required by his work aggravated and contributed in causing an unhealthy diseased condition in his spine. That such condition reached the critical point where, at the time he suffered this acute pain in his back and legs, the pressing of his foot on the brake pedal and then releasing it with the necessary movements accompanying that operation caused an acute rupture or sudden protrusion of the carteliginous tissue known as the intervertebral disc into the spinal ligaments and nerve roots thereby causing paralysis of his legs and the severe pains in the back. It we conclude that the evidence justifies such a finding then we must determine

whether such a finding is sufficient in law to sustain the award.

Is the evidence sufficient to sustain such a finding? Dr. Okelberry gave his opinion that the pressing and releasing of the brake in stopping the truck was not the primary cause of Vincent's back injury. He said that it was possible that

"a little forward tilting of the body, a little bending of the back and a little manipulation of the legs would bring a sudden protrusion of a previously damaged disc, or a previously diseased disc,"

but that would not be the original primary cause. He further testified that 75% of such cases are preceded by an injury to the back which the patient recalls, usually while lifting in a bending position, but "there may be a lot of months or years before a complete protrusion" and disablement occurs, that some times these previous injuries may be trivial but still cause or be a contributing factor in producing a later damaged or diseased condition. According to his testimony, these previous injuries to the back would either cause or contribute to producing a disturbance in the blood supply to this disc which eventually would result in a degenerative change which would create the necessary condition for the protrusion to occur. When the necessary condition for a protrusion exists in the back, whether brought on by damage from lifting or through other causes, or from disease, almost anything may be the immediate cause of the protrusion. A little bending, or twisting of the back or almost any trivial or ordinary movement may cause the protrusion of this vertebral disc into the nervous system and tissues of the spine and thereby bring on acute pain and complete disablement. If Vincent's back was in the condition described by the doctor, he gave it as his opinion that the movement of his legs in applying and releasing the brakes in stopping and starting the truck would be sufficient to cause the protrusion and produce his disablement which he described.

The doctor made no claim that there was any possibility of this protrusion occurring without some movement of the

back or the muscles leading thereto. He does not even suggest such a possibility either in a normal back or one which has been damaged by bending and lifting or ■ by disease or both. His whole theory for accounting for or determining what had happened was that defendant's back had been weakened or deteriorated by disease or by bending and lifting or both until it had reached the condition where a slight movement of the back would and did cause this disc to protrude into the nerves and ligaments of the spine which caused the pain and disablement of the defendant. Defendant's counsel do not contend otherwise. The evidence was sufficient to support a finding to that effect.

Defendant's counsel contends that the commissioners' decision was to some extent made in reliance upon the doctor's testimony that the condition of decedent's spine might have been aggravated by the bending and lifting which he was required to do in his work. He contends . ■ that the evidence does not support a finding to that effect, and even if it did, such a finding would not aid in supporting the award. Since the conclusion we have reached is not based on such being the fact, it is not necessary for us to discuss or express any opinion on the question of whether the evidence would sustain a finding that such was the fact or on whether such fact would tend to sustain an award.

Do the facts which we have shown to be supported by the evidence justify the award? Such facts show that the movements of the body normally required to perform the tasks of his job was the immediate cause and contributing factor in producing an internal failure or breakdown in defendant's body. Had defendant been in normal health such movements would have caused him no harm. Such movements were merely the normal exertions required every day in his work and were no heavier than are required by the normal activities of life during leisure hours. The evidence here shows that there normal exertions were a contributing cause of an

internal failure on defendant's spine which completely disabled him for a short time. Our problem is to determine whether such facts constitute a compensable accidental injury. This court has twice discussed this problem but has never directly determined it. See *Dee Memorial Hospital Ass'n* v. *Ind. Comm.*, 104 Utah 61, 138 P. 2d 233; *Robertson* v. *Ind. Comm.*, 109 Utah 25, 163 P. 2d 331.

In *Dee Memorial Hospital Ass'n* v. *Ind. Comm.*, supra [138 P. 2d 237], the applicant suffered a heart attack after continuous overexertion while doing much heavier but the same type of work that he usually did. There was no exact time or effort which could be fixed upon as the one which caused the attack but experts testified that the exertion was a contributing cause in producing it along with a previous heart ailment. Mr. Chief Justice Wolfe wrote the opinion of the court and after an exhaustive review of our previous decisions and the decisions of the English courts and the courts of other states of this country, in which he pointed out that the decisions of the English courts and the courts of many of the states of this country hold, quoting from the article cited below, that

"'nothing more is required than that the harm that the plaintiff has sustained shall be unexpected. * * * The element of unexpectedness inherent in the word "accident" is sufficiently supplied * * * if, though the act is usual and the conditions normal, it causes a harm unforeseen by him who suffers it.'"

See "The Drafting of the Workmen's Compensation Acts" by Francis H. Bohlen, 25 Harvard Law Review 328. In that case Mr. Chief Justice Wolfe concludes:

"We are not required in the case at bar to go so far as the English cases have gone for here we have a commission finding supported by the evidence that the applicant suffered the heart attack while engaged in *unusually* heavy work which was greatly in excess of his ordinary duties. The expert medical testimony adduced clearly established the fact that the heart attack was directly attributable to this extra work or overexertion. We do not intend to open the door to recovery for all injuries of this type merely because they occur on the premises of the employer during the hours of the employment.

In such cases the commission would be warranted in requiring clear and convincing proof that the claimed injury resulted because of extra work or overexertion; merely showing a possibility of such a cause and effect will not suffice. On the authority of the Utah case of *Hammond* v. *Industrial Commission,* supra [84 Utah 67, 34 P. 2d 687], which we do not think is distinguishable from the case at bar, and the other cases cited, which take an even more extreme position, we hereby affirm the award of the Industrial Commission." (Emphasis ours.)

This case holds that where from the evidence it is clearly established that unusually heavy labor performed in the course of his employment of the same type but greatly in excess of his ordinary duties was a contributing factor in causing a heart attack to an employee such attack constituted a compensable accidental injury. That this is true even though such overexertion was a continuing process and not the result of one definitely fixed exertion and even though the applicant was suffering from a previous heart ailment. That is as far as the facts there required us to go and we there properly pointed out that it was not necessary for us to take the more extreme position that the English and some American courts have taken to the effect that it is not necessary in order to constitute a compensable accidental injury, that there be unusually heavy labor greatly in excess of the ordinary duties. This case is similar to that case in its facts except that here there was no unusually heavy labor greatly in excess of the ordinary duties and we must now determine whether we will take the more extreme position of the English and some American cases pointed out in the *Dee Hospital* case. However, in order to sustain this award, we do not have

"to open the door to recovery for all injuries of this type merely because they occur on the premises of the employer during the hours of the employment",

for here the proof is clear that the injury resulted from the ordinary exertion required by the applicant's employment. So our problem is to determine whether we will extend the Workmen's Compensation Act to cover all cases where a

person becomes disabled through an internal failure which is partially caused by ordinary exertion, without unusually heavy labor in excess of the employee's ordinary duties.

*Robertson* v. *Industrial Commission, supra,* is a case where an employee suffered a sudden heart attack which caused his death while attempting to turn the carcass of a heavy horse which he was skinning in the course of his employment. The Commission concluded that there was no evidence of unusual or heavy exertion and on the basis of the *Dee Hospital* case denied an award. We reversed that holding by a three to two decision. Four separate opinions were written each taking a slightly different position. While three justices concurred in the result, only two did so for the same reasons. The main opinion was written by Mr. Justice McDonough and concurred in by Mr. Justice Turner. He held that the commission was mistaken in holding that the evidence did not sustain a finding that there was unusually heavy exertion.

The author of this opinion concurred in the result on the ground that the evidence was conclusive that exertion in the course of his employment was a contributing cause of the heart attack and that it was not necessary to show that there was unusually heavy exertion in order to establish a compensable accidental injury. Thus adopting the more extreme position of the English and American cases, pointed out in the *Dee Hospital* case, to the effect that if the exertion in the course of the employment causes the internal failure, and such failure is unexpected and not intentional it is a compensable accidental injury even though the exertion is not overexertion or unusually heavy. If that position is adopted here we must affirm the award, but if we refuse to go beyond what we were required to hold in the *Dee Hospital* case and require unusually heavy or overexertion in order to constitute compensable accidental injury, then we must reverse the award. The above referred to opinion closes with the following language:

"To my mind the weight of authority and the best reasoned cases hold that an accident arises out of the employment when the required exertion producing the injury is too great for the man undertaking the work, whatever the degree of exertion or the condition of the man's health, provided that the exertion is either the sole or a contributing cause of the injury. Injury and Death under Workmen's Compensation Laws by Horowitz, pages 88 and 89; *Griffin's Case*, 315 Mass. 71, 51 N. E. 2d 768; *Lumbermen's Mutual Casualty Co.* v. *Griggs*, 190 Ga. 277, 9 S. E. 2d 84; *Brown's Case*, 123 Me. 424, 123 A. 421, 60 A. L. R. 1293; *Northwest Metal Products, Inc.* v. *Department of Labor*, 12 Wash. 2d 155, 120 P. 2d 855; *Cavanaugh* v. *Murphy Varnish Co.*, 130 N. J. L. 107, 31 A. 2d 759; *Peterson* v. *Safeway Stores*, 158 Kan. 271, 146 P. 2d 657; *Jones* v. *Town of Hamden*, 129 Conn. 532, 29 A. 2d 772; *McCormick Lumber Co.* v. *Department of Labor*, 7 Wash. 2d 40, 108 P. 2d 807; *Duff Hotel Co.* v. *Ficaro*, 150 Fla. 442, 7 So. 2d 790; *Hardware Mutual Casualty Co.* v. *Sprayberry*, 195 Ga. 393, 24 S. E. 2d 315."

To this effect see the recent case of *Rivard* v. *J. F. McElwain Co.*, 95 N. H. 100, 58 A. 2d 501, 503, where it is said:

"An accident may be said to arise out of and in the course of the employment if the exertion producing the accident is too great for the man undertaking the work, even though the degree of exertion is usual and ordinary and 'the workman has some predisposing physical weakness.' * * *

"While the decedent's injury was not accidental as to cause, it was as to result and this is sufficient under the statute. * * * The holding in this case that the decedent's injury was by accident is supported by the great weight of authority. See Horovitz, Current Trends in Workmen's Compensation (1947) 499-501, * * *".

In the *Robertson* case, Chief Justice Larson dissented for the reason that in his opinion the evidence did not conclusively show that the heart attack was brought on by overexertion. Mr. Justice Wolfe also dissented on the ground that he did not agree that the evidence was sufficiently strong to require us to hold as a matter of law that the exertion caused the heart attack. The difference between these opinions is that the former required overexertion and refused to adopt the more extreme position mentioned in the *Dee Hospital* case, whereas the latter adopted that position but held that even so, the evidence was not sufficient to require a finding that the exertion caused the heart attack.

Mr. Chief Justice Wolfe emphasized, as he did in the *Dee Hospital* case, that the evidence should be clear that the exertion caused the injury before the commission should be required to grant an award. He pointed out that where an employee suffers an internal failure while in the course of his employment, if he is an older man with a previous heart ailment and is performing unusually heavy tasks it is much more probable that the injury is caused by the exertion than where he is a young man exerting only the normal effort. He emphasizes that the causal connection is much clearer where there is a sudden breakdown in the midst of unusually heavy exertion. But he holds that if it is clear that the exertion causes the internal breakdown it is of little importance whether the exertion is unusually heavy or merely the normal exertion, in either event, it is a compensable accidental injury. Thus at page 40 of 109 Utah, and page 338 of 163 P. 2d, he said:

"Thus where *exertion or overexertion* in the course of the employment causes disability or death, I agree that compensation should be allowed. * * *

"I agree with Mr. Justice Wade that it is not greatly material whether the exertion was ordinary for the job or unusually heavy if it be definitely established that the exertion did in fact cause the internal failing. * * *" (Emphasis ours.)

And at page 47 of 109 Utah and page 341 of 163 P. 2d he concludes:

"* * * I conclude that it is necessary that the claimant establish some connection between the injury and the employment before compensation will be allowed. The mere fact that the employee becomes ill on the premises of the employer will not suffice. The employers should not be charged with internal failures not contributed to nor caused by the employment nor occurring in pursuit thereof nor in any way employment-connected. * * *

"My conclusions are: An internal failure caused by exertion or overexertion is an accident within the Act. That before disability or death flowing from such accidents is compensable it must be shown that the internal failing was employment-connected. The burden of showing this employment-connection is upon the applicant. * * *"

It is clear that this court is definitely committed to the proposition that where an employee suffers an internal failure or breakdown which results from overexertion in the course of his employment that such is a compensable accidental injury under our Workmen's Compensation Act. See *Robertson* v. *Industrial Commission,* supra; *Dee Memorial Hospital Ass'n* v. *Industrial Commission,* supra; *Hammond* v. *Industrial Commission,* 84 Utah 67, 34 P. 2d 687; *Columbia Steel Co.* v. *Industrial Commission,* 92 Utah 72, 66 P. 2d 124; *Southern Pacific Co.* v. *Industrial Commission,* 96 Utah 510, 87 P. 2d 811; *Continental Baking Co.* v. *Industrial Commission,* 92 Utah 438, 69 P. 2d 268.

Does our statute require that there be an accident which causes, but is a separate and distinct event from, the injury or death? Section 42-1-43, U. C. A. 1943, provides compensation for every employee

"who is injured  *  *  *  (or) killed, by accident arising out of or in the course of his employment".

The term "by accident" suggests two separate events; the one an accident which causes the other, an injury or death. It is argued that in using the word "by" between the word "killed" and the word "accident," the legislature has expressed a clear intention that, in order for the injury or death to be compensable, it must be caused by a separate and distinct accidental event and not be merely accidental injury or death. In other words, it is contended that there must be an accidental cause separate and distinct from the resulting injury or death and not merely an accidental result. There are some cases which so hold and go further and hold that this kind of a case does not meet that requirement. See *Pierce* v. *Phelps Dodge Corp.,* 42 Ariz. 436, 26 P. 2d 1017. If we strictly construe that language the conclusion is inevitable that there must be an accidental cause separate and distinct from the resulting injury or death.

But if such are the requirements of the statute, they are fully complied with here. Although in this case the act of

raising his foot from the brake pedal and starting the car was the cause which set in motion a chain of events ultimately resulting in injury, that exertion was not accidental because he did those acts intentionally. The accident consists in the unexpected internal failure of his system to function normally. There is no requirement in the statute that the accident be the first in the chain of events which ultimately results in injury, or that it be an outward force applied to the employee, all it requires is *injury or death by accident*. In all cases where death results from unexpected internal failure there is first the unexpected internal failure which is the accident which in turn causes injury or death. The requirements of the statute are fully met in that there is a separate accidental event which causes the resulting injury or death. In some cases of injury by unexpected internal failure, at least as far as the evidence or medical science discloses, it may be that the only accidental event is the resulting injury itself, but in most if not all of such cases, if all the details surrounding the injury were known, it would be apparent that there was an unexpected accidental event which preceded and caused the resulting injury but which is not the compensable injury complained of.

When we analyze most cases of unexpected internal failure it becomes apparent that there is an accidental event which preceded and caused the resulting injury. In the case of a hernia, where the strain of the muscles ruptures the lining tissue of the abdominal cavity, the mere rupture of the lining tissue alone does not cause an incapacitating injury. Although in a sense the rupture in the lining tissue is an injury, it is not the injury which incapacitates the employee, for as long as his bowels still remain in place he is not incapacitated. Many persons wear a truss which holds the bowels in place and continue to perform their regular tasks. It is only when the bowels protrude out of the proper place and thereby are prevented from performing their proper function that the incapacitating injury occurs. There

we clearly have an accidental event, the rupture of the abdominal lining, which results in the protrusion of the bowels, which is the incapacitating injury. The same is true where a blood clot or other non-liquid substance gets in the blood stream. The person is not incapacitated until such substance lodges somewhere in the blood stream and clogs its passage. When that occurs the result may be death or other serious bodily injury. There we have the accidental event, in the occurrence of the non-liquid substance in the blood stream, which ultimately prevents the passage of the blood and results in injury or death.

So in the present case we have an accidental event which caused the resulting injury. The doctor testified that there was "an acute rupture of an intervertebral disc" or cushion which caused the disc to protrude into the spinal ligaments and nerve roots thereby impinging on the nerves and causing severe pains and paralysis in the back and legs. Here the unexpected accidental event was the rupture of the disc that in turn caused the disc to protrude into the spinal ligaments and nerve roots which was the disabling injury here complained of. The rupture of the disc without its protrusion was not the disabling injury. Claimant was not disabled until the disc protruded into the nerve centers. So here we have all the statutory requirements even though it be construed to require a separate accidental event which causes the resulting injury.

However, it is not necessary that we adopt the foregoing reasoning to hold that the statute makes this kind of an injury compensable. Our problem is not what the language means if strictly construed but what was the legislative intention. In determining that we must keep in mind the historical background, the purposes of the act and whether or not it will be workable. With these in mind, even if we treat an internal failure as only an accidental result, as it is usually treated, still we must conclude that the legislature intended our statute to cover this kind of a case.

The English Workmen's Compensation Law was adopted in 1897 twenty years prior to the time we adopted ours in 1917. The English act provided compensation for "injury by accident" the same as ours. In 1903, in *Fenton* v. *Thornley,* 1903 A. C. 443, the House of Lords held that an employee who was ruptured by strain in his employment satisfied the requirements of the statute and the resulting injury was unexpected even though the strain was intended. The opinion recognized that the language of the statute suggests a separate accidental event which causes the injury but held that such language was used loosely and should be construed in its popular sense. That so construed, all that is required is that the resulting injury be accidental. It was said that the distinction between accidental cause and accidental result was over the heads of parliament and of employer and employee, and that the average person would consider he had met with an accident in either case. In holding that the applicant had suffered compensable injury they relied on *United States Mutual Accident Association* v. *Barry,* 131 U. S. 100, 121, 9 S. Ct. 755, 33 L. Ed. 60; *Martin* v. *Traveler's Ins. Co.,* 1 F. & F. 505, and *North American Life & Accident Insurance Co.* v. *Burroughs,* 69 Pa. 43, 8 Am. Rep. 212, which involved insurance policies against bodily injury by accident. This court has repeatedly so construed similar policies. See *Handley* v. *Mutual Life Ins. Co.* 106 Utah 184, 147 P. 2d 319, 152 A. L. R. 1278 and cases therein cited.

In 1912, Francis H. Bohlen, wrote a series of articles entitled "A Problem in the Drafting of Workmen's Compensation Acts," 25 Harvard Law Review 328, 401 and 517. At that time at least 10 states had adopted such acts and many more were considering them, and the articles were written to point out the purposes of such acts and how best to accomplish them. This very problem was discussed and legislatures were advised that if the result reached in *Fenton* v. *Thornley,* supra, was intended, the use of the term "injury by accident," since its meaning had been con-

strued to mean only an unexpected result, was desirable. Thereafter, with full access to that decision and article our legislature enacted our Workmen's Compensation Law and adopted the term "injury by accident." It is a familiar doctrine of statutory construction that where a legislature adopts a statute which has already been construed, it usually adopts the construction placed thereon. *Fuller-Toponce Truck Co.* v. *Public Service Commission*, 99 Utah 28, 96 P. 2d 722. The conclusion is unavoidable that in so doing the legislature intended to adopt the construction given to those words by *Fenton* v. *Thornley*, supra.

This court has accordingly held over and over again that such was the meaning of that term. Apparently the first case was *Tintic Milling Co.* v. *Ind. Comm.*, 60 Utah 14, 206 P. 278, 23 A. L. R. 325. There we discussed that very problem and relying on *Fenton* v. *Thornley*, supra, and Prof. Bohlen's Articles, supra, held that an unexpected injury was all that was necessary. This result was concurred in by the entire court. Mr. Justice Frick expressed some doubt on the principle but said he yielded to the judgment of his associates. Since then we have held that such was the settled law of this state. See *Cherdron Const. Co.* v. *Simpkins*, 61 Utah 493, 214 P. 593; *McEwan* v. *Ind. Comm.*, 61 Utah 585, 217 P. 690; *Graybar Electric Co.* v. *Ind. Comm.*, 73 Utah 568, 276 P. 161; *Dee Memorial Hospital Ass'n* v. *Ind. Comm.*, supra; *Robertson* v. *Ind. Comm.*, supra. Neither the case of *Frederickson* v. *Ind. Comm.*, 68 Utah 206, 249 P. 480 nor *Bamberger Coal Co.* v. *Ind. Comm.*, 66 Utah 203, 240 P. 1103, place any doubt on this construction. Those cases simply hold that although the result was unexpected there was no definite time or place where or when the internal failure occurred and therefore it was not accidental. Thus since 1922 this court has uniformly held that an unexpected internal failure meets the requirements of the statute and the legislature by failing to amend has acquiesced in that construction. For us to now hold that the legislature did not so intend would be a strange doctrine.

Still another reason why we should not construe this statute to require overexertion is that the obvious intention of the legislature was to insure all employees against disabling accidental injury caused by the employment. And to prevent expensive litigation and uncertain results existing under the common law negligence theory. See Prof. Bohlen's Articles, supra. If we adopt the overexertion requirement and limit it to anything short of exertion beyond the capacity of the injured employee to endure there will be no end of the uncertainty and litigation which will result. In the cases where we have discussed overexertion, we have considered only the question of whether the exertion was greater than was usually required by the employee's job. See *Continental Baking Co.* v. *Ind. Comm.,* supra; *Dee Hospital* v. *Ind. Comm.,* supra; and *Robertson* v. *Ind. Comm.,* supra. In the first of these cases we expressly played down the overexertion, the second case we merely compared the exertion with the usual exertion required by the job, and the same is true of the third, where, however, only two justices agreed that there was evidence of overexertion. Obviously if that is the test no one will ever know what this court will consider sufficient overexertion. Also under that test if the work usually required by the job is so great that it would break the strongest man even he will not be able to recover. But if it is more than usual exertion which causes the injury the employee can recover no matter how light the work is which causes the injury.

On the other hand, if overexertion means that the exertion must be beyond the capacity of the ordinary person then the person who has any weakness or is vulnerable to overexertion can never recover, while the person with a strong constitution can always recover because he will not break under ordinary conditions. It would be unusual if the legislature intended to protect the strong and make the weak take care of themselves. If we attempt to apply either of those tests, or a combination of both, we will make the law so complicated that it cannot be consistently applied to all

cases and we will create constant litigation. There is no reason whatever why the legislature, if it had the objects it is usually imputed to have had should intend to cover any internal failure injury and not to cover all such cases as long as the injury arises in the course of the employment, is caused by the employment and is an accidental or unexpected result. Such is in accord with the great weight of authority, and the natural and just result. In other words what the statute means is that the injury must be **accidental**, not that it be caused by a separate accidental event.

If an unexpected internal failure is an accidental injury, such failure caused by ordinary exertion is as much accidental as where caused by overexertion. It is even more clear that the internal breakdown is accidental, in that it is not expected, unintentional and undesigned, where it is caused by ordinary exertion than where it is caused by overexertion, because we cannot as readily expect that ordinary exertion will cause an internal failure as we can that overexertion will produce that result. That the main necessary element of an accident is that it shall be unexpected, unintentional and undesigned, is now well established by the decisions of this court. In *Cherdron Construction Co.* v. *Simpkins,* 61 Utah 493, 214 P. 593, 596, this court held that

"The underlying principle seems to be that the injury must happen suddenly, undesigned and unexpected, and at a definite time and place."

In the *Dee Hospital* case we have relaxed the requirement that it be sudden and at a definite time and place so that the essential requirement now seems to be that it be unexpected and not designed. See *Robertson* case, supra, especially the opinions of Mr. Chief Justice Wolfe and myself, and *Andreason* v. *Industrial Comm.,* 98 Utah 551, 100 P. 2d 202, 205. That requirement is certainly as much complied with in the case of ordinary exertion as where there is overexertion.

Plaintiff makes no contention that an injury which is caused by ordinary exertion is less accidental than where caused by overexertion. What he seems to argue is that here in order to sustain this award we must go to the extent that we said in the *Dee Hospital* case we did not intend to go, and hold that the mere showing that the employee suffered an internal injury while performing his duties in the course of his employment is enough without showing that the exertion which he was using in performing those duties was the cause of the injury. In this argument he overlooks the fact that the evidence here establishes that the exertion was the cause of the injury or internal breakdown, and that he has made no contention that it was not sufficient to justify the commission in so finding. We again wish to make it clear that we do not intend to dispense with that requirement that in a case of this kind where the employee suffers an internal bodily failure or breakdown the burden is on the applicant to show that the exertion was at least a contributing cause thereof. In other words, we are not abandoning the requirement that in cases where disease or internal failure causes or is the injury there must be a causal connection between the employment and the injury. See *M. & K. Corp.* v. *Industrial Commission,* 112 Utah 488, 189 P. 2d 132; *Robertson* v. *Industrial Commission,* supra; *Dee Hospital* v. *Industrial Commission,* supra; *Andreason* v. *Industrial Commission,* supra.

The fact that overexertion is more apt to cause an internal failure than is ordinary exertion is no reason why we should require proof of overexertion to sustain an award. To make such a requirement would be to change the substantive law because in some cases the proof may not be sufficient. In many cases the proof that the exertion did cause the injury might be conclusive but under such a rule the applicant could not recover because he did not show overexertion. In a borderline case where the other proof is the same it might well be that proof of ordinary exertion would not be sufficient to sustain a finding that the exertion

caused the injury, where if overexertion were shown the proof might be sufficient. But there is nothing in the statute which would justify a holding that an injury is compensable where overexertion is shown but is not compensable where only ordinary exertion is shown, provided that in both cases it is shown that the exertion causes the injury.

Nor is the fact that the internal failure might have occurred after working hours from the same kind of exertion any reason why we should deny compensation. Here the evidence shows that the exertion did cause the internal failure and that it was accidental and meets the requirements of the Act in other respects. There is nothing in the statute which requires or authorizes us to deny compensation merely because the same type of accident might have happened at a time or place where the employee was not acting in the course of his employment. Nor is there any other reason or justification for us so holding. We have granted awards where the accident happened in the course of the employment but it might have happened some other time or place. In *State Road Commission* v. *Industrial Commission*, 56 Utah 252, 190 P. 544, a road worker was killed by lightning while seeking shelter from a storm. Lightning might hit a man at any time or place but because he was struck while at a place where his employment required him to be he was awarded compensation. In *Tavey* v. *Industrial Commission*, 106 Utah 489, 150 P. 2d 379, an employee in the course of her employment was seized with a fainting spell and fell and struck her head on a book case which caused disability. She might have fainted at any other time or place and fell and struck her head on a hard object, but we held that since it happened while she was on the job it was a compensable accident. These cases are not cases where a disease or internal failure caused the injury and probably in that respect as close a causal connection is not required as in such cases, but that does not detract from their authority for the proposition for which they are cited.

This court has repeatedly held that the Workmen's Compensation Act should be liberally construed and where there

is doubt should be resolved in favor of a recovery. See *M. & K. Corporation* v. *Industrial Commission,* supra, and the many cases therein cited to that effect. With this rule in mind and because we believe that our position is supported by the better reasoned cases we hold that this award must be sustained. Defendant shall recover his costs.

McDONOUGH, J., concurs.

WOLFE, Justice (concurring specially).

The first requisite for the payment of compensation under the Workmen's Compensation Act is that the injury which caused the disability must have been employment connected. That is to say it must have been due to an accident which arises out of or in the course of the employment. If an employee is working and while working an outside agency inflicts an injury, it is employment connected because the employment has exposed the employee to the injury. But compensation cannot be paid merely because the disability or death occurred in the duration of the employment. "In the course of his employment" connotes more than in the duration of the employment. Functions performed by the employee in furtherance of the industry in which he is employed must be a material contributing factor to the death or disability. The problem of the Commission in these cases where the disability or death occurs by an internal failure contemporaneous with exertion attendant upon the work or soon thereafter, is to determine whether the exertion was a causative factor of the death or injury or merely coincidental with the employment. When the exertion is comparatively mild and of a kind which usually attends the kind of work the employee has been doing and disability or death results, then it would appear to me that the proof that it was a material contributory factor to death or disability should be clair and convincing. The more mild the exertion, the more likely that the internal failing was merely coincidental. If, on the other hand, the death or disability occurs

contemporaneous with or soon after an extraordinary exertion performed in the course of the employment, there would appear to be a more definite basis for an inference that the work was a paramount contributing cause. For example, if the employee was under a truck trying to raise it with the upward pressure of his back and there occurred during such exertion or soon thereafter an internal giving-way, we could, even as laymen, conclude that the lifting was apparently the sole or a material concurring cause of the internal failure. In the case of *Dee Memorial Hospital Ass'n* v. *Ind. Comm.*, 104 Utah 61, 138 P. 2d 233, the employee was exerting himself beyond the point called for by his usual work. The pains which ensued and which it was later found by consultation with the doctor indicated a coronary heart disorder and which required prolonged rest were tied into the work of moving fairly heavy boxes and 100 pound sacks of fire clay. Had those same pains come during exertion in his usual work, the problem of determining whether *that exertion* had aggravated a previously existing heart disease or the aggravation was simply the result of a normal progression of the heart disease might have been more difficult, but it would still have been for the commission to resolve.

From time to time we shall encounter difficulty in determining whether the commission acted unreasonably or arbitrarily in those doubtful cases above mentioned. It is not so much the principles laid down in the prevailing opinion as it is the nature of the proof with which I am concerned. In this type of case we are dealing with situations involving death or disability which situations may, due to a functional failure, occur by reason of the work or may be purely coincidental with it. Where the death or disability occurs under such circumstances as to present prima facie doubt as whether it was caused by exertion incidental to the work, or an event which occurred only in the duration of the work and in regard to which the work furnished no material or efficient concurring or cooperating

cause, then, before a favorable award is made, it should appear by clear and convincing evidence that the exertion in pursuance of the work was at least an efficient cooperating cause of the disability or death. The commission should have clear and convincing proof that the exertion done as a part of the work, whether ordinary or extraordinary, was a factor which materially contributed to or caused the death or disability. Unless the commission requires clear and convincing proof that the disability was employment connected, that is, materially contributed to by the work performed, we may open wide the door to compensating non-employment connected death or disabilities which the act was not intended to cover. This rule I suppose is primarily one of guidance for the commission. It would seem that unless no reasonable mind could say that the evidence was clear and convincing, the commission could not be overturned for arbitrariness.

I recognized in my dissenting opinion in the case of *Robertson et al.* v. *Ind. Comm.*, 109 Utah 25, 163 P. 2d 331, 338, that rather early in the history of compensation in this state we had adopted the English view and merged the word "accident" and the word "injury" in Section 42-1-43, U. C. A. 1943.

I said in my opinion in that case:

"In view of our many decisions, as noted above, we need not now re-examine the chain of reasoning through which we have come to treat internal failures as accidents within the meaning of the Act. The language of the Act, Sec. 42-1-43, U. C. A. 1943, would justify a holding that the elements, looking backward, were (1) disability or death, (2) injury, (3) accident, (4) in the course of or arising out of the employment. Our holdings have, by treating the internal failing as the accident, lumped numbers two and three together. The injury and the cause that produced it are, in an internal failing, ofttimes so closely related as to appear to be a unit occurence. A strain and an injury—cause and effect—that appear as one. The strain itself which causes the trauma and the trauma are in the predecessor—cause and successor—effect relationship so that the strain appears to be the injury. Where there is intended exertion or overexertion which appears to have caused the failing there may be no

unexpected event which caused injury, but as noted in *Handley* v. *Mutual Life Ins. Co. of New York,* [106 Utah 184] 147 P. 2d 319, 152 A. L. R. 1278, an unexpected and untoward result is ofttimes itself denominated the accident."

In the above cited case of *Handley* v. *Mutual Life Ins. Co. of New York* [106 Utah 184, 147 P. 2d 320], the policy provided that the insurance company would pay the beneficiary two thousand dollars,

"upon receipt of due proof that the Insured died as a direct result of bodily injury effected solely through external, violent, and accidental means, independently and exclusively of all other causes, and of which, * * * there is evidence by a visible contusion or wound on the exterior of the body, and that such death occurred (a) within ninety days after the date of such injury, * * *."

While law is not logic and ofttimes not logical, but designed to serve the relationships and transactions of men in the exigencies of life, it should not be unnecessarily inharmonious. In the field of accident insurance contracts we have held an unexpected result to be the accidental means in the face of quiet definite and accurate language of a contract which embodies the law which the contracting parties agree on to govern situations and liability contemplated in the relationship between insured and insurer. It may be that we feel ourselves more free to reach for a desirable social result in reference to insurance contracts than we do in the case when the interpretation of a statute is involved.

But in view of the interpretation of the English courts and the Pandora's box of difficulties which may be opened by the refinements between usual and unusual, exertion and overexertion, ordinary and extraordinary exertion measured by the individual involved or by the industrial function performed by him or both, I prefer to adhere to the difficulties involved in determining whether an internal failing is caused or materially contributed to by the industrial functions being performed by the employee at or near to the time of failure as distinguished from those which happen

during the span of work but not employment connected rather than to open the door to a new set of problems, the nature and complexity of which cannot presently be fully foreseen now.

"Better to endure the ills that beset thee now, than to fly to those thou knowest not of."

It is just as much judicial legislation to read "overexertion" into the statute as it is to read "accident" out, although I acknowledge that Mr. Justice Latimer feels that he is compelled to read the latter word in because we have in some cases read "accident" out, and that he believes he is doing nothing more than saying "thus far but not further."

Certainly I am against opening the door to making the employer or his insurance carrier pay for deaths by disease or infirmity unconnected with industry but happening during employment time. I stated in my dissenting opinion in the *Robertson* case that such might be unconstitutional. And in the long run, the granting of compensation for death or disability in close cases involving internal failure not referable to accident or mishap but only to industrial exertion may react against the laboring classes. When the labor market is free, employers, especially self-insurers, tend to reduce the age limit beyond which they will not employ and become more strict in the physical examinations of those applying for employment. There is something pathetic in the plight of middle aged men suffering from some not too serious infirmity unable to procure work that they are quite capable of performing with little risk to their health, simply because the employer finds it unnecessary to take even that risk.

I recognize the difficulties inherent in the problem before us and that the two viewpoints are both tenable. I choose the path of drawing no distinction between usual and unusual exertion cases for compensation purposes, but of putting my faith in the ability of the commission to draw the line between employment and non-employment connected

internal failures aided by the principle that in close cases the proof of industry connection should be clear and convincing.

In conclusion, I desire to say that I am writing this opinion because I am not prepared to adopt some of the reasons set forth in the prevailing opinion.

LATIMER, Justice.

I dissent. I am unable to concur with the majority opinion in spite of the fact that many previously decided cases have indicated a trend away from what I believe should be the holding in this case. I believe that acts such as this should be liberally construed within the framework of the act, but should not be extended beyond the structure that has been erected by the legislature. To do so is not liberal interpretation. It is judicial extension. I further believe that if we have crept beyond the framework of the act we should stop at the first reasonable resting place.

Section 42-1-43, U. C. A. 1943 provides as follows:

"Every employee mentioned in section 42-1-41 who is injured, and the dependents of every such employee who is killed, by accident arising out of or in the course of his employment, wheresoever such injury occurred, provided the same was not purposely self-inflicted, shall be entitled to receive, and shall be paid, such compensation for loss sustained on account of such injury or death, and such amount for medical, nurse and hospital services and medicines, and, in case of death, such amount of funeral expenses, as is herein provided."

For the purposes of this case, this section requires that the employee be injured by an accident arising out of or in the course of his employment. The only issue of any moment centers around the phrase *"injured  *  *  *  by accident"* as all other important matters are conceded.

Mr. Justice Wade in his opinion gives a resume of the testimony and the only portions I care to emphasize are those dealing with the facts and circumstances surrounding the claimed accident. The record bears out the fact that the

applicant was doing his work in the customary, usual and ordinary way. There was no unusual incident, no fortuitous circumstance, no overexertion, no jarring, jerking or shaking, or external force. The injury was precipitated by ordinary movement and the medical testimony is to the effect that the slightest movement or motion by the applicant would have brought about the same result. If so little movement were to light up applicant's physical illness, then unless he had always remained immobile, the same results would have necessarily followed.

As announced by Mr. Justice Wade, the sole question is whether or not an injury brought about in such a way is made compensable by a reasonable interpretation of our statute. I believe it can be fairly stated that the courts of England and those of the United States have encountered great difficulty in interpreting the various statutes involved, and out of the many decisions an irreconcilable conflict has arisen. In many of the statutes "injury," "injured," or "personal injury" are used alone and not qualified by "accident" or "accidental." The statutes of some jurisdictions cover only personal injuries by accidents caused by violent or external means. Other jurisdictions have statutes using the same phraseology as that used by our legislature. It is only from the latter jurisdictions that helpful assistance can be obtained in interpreting our act.

This court in *Dee Memorial Hospital Ass'n* v. *Industrial Commission,* 104 Utah 61, 138 P. 2d 233, considered some of the cases dealing with the interpretation of statutes, similar to the one enacted in this state, and reached the conclusion that an employee injured by overexertion was entitled to an award of compensation. In that case the court quoted with approval the principles announced in English cases. *Clour, Clayton & Co.* v. *Hughes,* A. C. 242, 3 B. W. C. C. 275, 34 Digest 273, 2316 ; *Fenton* v. *Thorley & Co., Ltd.,* A. C. 443, 34 Digest 266, 2264 ; and *Ormond* v. *C. D. Holmes & Co., Ltd.,* 2 A. U. E. R. 795. Undoubtedly these cited

cases correctly define the word "accident" as an unexpected event but they hold the injury itself to be the event.

Many jurisdictions in this country have followed the English rule and we have already committed ourselves to follow the principle, at least insofar as strain and over-exertion are concerned. This in spite of the fact that the wording in our statute commands a contrary conclusion.

In ordinary usage, the word "accident" can be used to denote an unexpected occurrence which produces an injury. It can also be used to denote an unexpected injury. The word "injury" always denotes a result and not a cause. Had our legislature used only the word "accident," then it could reasonably be contended that the legislature had intended to cover both the cause and the result. Had it used only the word "injury" without the word "accident," then it would have covered all results regardless of the cause. However, the legislature used both the words "injury" and "accident" so that it appears to me we must treat the word "accident" as dealing solely with the cause and not with the result. To do otherwise deletes one of the two words from the statute and leads to conflicting results unless every sudden death, injury or illness is considered an accident.

Perhaps the best analysis of a statute similar to Section 42-1-43, U. C. A. 1943, is contained in the case of *Pierce* v. *Phelps Dodge Corp.*, 42 Ariz. 436, 26 P. 2d 1017, 1020. In view of the similarity in wording of the two statutes and because I believe the opinion correctly interprets the wording used by our legislature, I quote at length:

"It is obvious that while 'injured' always implies a result, the word 'accident' may mean either a cause or a result, and which it is must be determined by the context. The preposition 'by,' which is found between the word 'injured' and the word 'accident,' supplies the answer. Used as it is, it can only mean 'by medium of, in consequence of, or through the agency of,' and the 'accident' is therefore the cause of the injury. To illustrate, if A says 'I had an accident; I injured my arm,' it is natural to presume that by the word 'accident' he referred to the result to his arm, but if on the contrary he says 'I injured my arm by accident,' the ordinary reasonable man would un-

doubtedly believe that 'accident' so used referred to the cause of the injury to the arm and not to its condition.

"And yet if the cases which attempt to define 'accident' are carefully read and analyzed, it is apparent that many of them have utterly overlooked the qualifying effect of the preposition and have considered the word 'accident' as though it stood alone.

"The original Workmen's Compensation Law was adopted by the British Parliament in 1897. In 1903 in the case of *Fenton* v. *Thorley*, (1903) A .C. 443, the question arose as to the meaning of the word 'accident' in the phrase 'injury by accident'; it being contended on the one hand that it referred to the cause of the injury alone and not to the injury itself, while on the other hand it was urged that it referred to the injury as well as to the cause. The case was carried to the House of Lords, and it was finally held that the word included an unexpected injury regardless of the cause. The opinion is too long to be quoted in full, but a careful reading and analysis thereof will show that the court considered the word 'accident' as though standing alone. The following quotation shows that it clearly understood that the word 'accident' in some cases is used to signify the cause and in other cases the result.

" 'The word "accident" is not a technical legal term with a clearly defined meaning. Speaking generally, but with reference to legal liabilities, an accident means any unintended and unexpected occurrence which produces hurt or loss. But it is often used to denote any unintended and unexpected loss or hurt apart from its cause; and if the cause is not known the loss or hurt itself would certainly be called an accident. The word "accident" is also often used to denote both the cause and the effect, no attempt being made to discriminate between them. * * *'

"But it failed apparently to see that the only possible effect of the use of the words 'injured by' in the phrase is to establish that the accident referred to therein is the cause and not the effect. The injury referred to is obviously a result. If, then, in this connection the word 'accident' is also a result, it is tantamount to saying that the phrase means 'an injury by injury' or a 'result by a result.' Notwithstanding our respect for the decisions of so eminent a tribunal and the similarity of the language in the two acts, we cannot believe that our Legislature when it adopted our Compensation Act intended to attribute to ordinary words such an absurd meaning. If, on the other hand, the phrase was intended to mean a result from a certain kind of cause, it is intelligible and has a fixed and definite application. Had our Legislature intended that the words 'injury' and 'accident' both meant a result, it should and doubtless would have joined them by the conjunction 'or' rather than the preposition 'by.' "

I believe a reference to a few of our cases will illustrate the difficulty encountered by this court because we held the injury to be the accident and attempted to differentiate on the theory that compensation was controlled by fixing the incidents leading to the injury with certainty. In *Bamberger Coal Co.* v. *Ind. Comm.*, 66 Utah 203, 240 P. 1103, we held that death contributed to by overexertion was not compensable. In *Fredrickson* v. *Ind. Comm.*, 1926, 68 Utah 206, 249 P. 480, 481, we held that even though a physical ailment was exaggerated and accelerated by overexertion, there was no accident within the meaning of the statute and compensation was denied. In *Hammond* v. *Ind. Comm.*, 84 Utah 67, 34 P. 2d 687, we held that death contributed to by everexertion was compensable. In *Continental Baking Co.* v. *Ind. Comm.*, 92 Utah 438, 69 P. 2d 268, we held that a hernia brought on by extra exertion was an accident within the meaning of the statute and therefore compensable. In *Dee Memorial Hospital Ass'n* v. *Ind. Comm.*, supra, and in *Robertson* v. *Ind. Comm.*, 109 Utah 25, 163 P. 2d 331, we again held death contributed to by overexertion was compensable. In *Young* v. *Salt Lake City*, 97 Utah 123, 90 P. 2d 174, we held that an employee who died as a result of lead poisoning caused by exposure to air laden with particles of paint did not die by reason of an accident. In *Andreason* v. *Ind. Comm.*, 98 Utah 551, 100 P. 2d 202, we held that an employee who died as the result of contracting a disease attributed to bacillous interiditis had suffered an injury by accident.

In those cases where compensation was awarded, we sustained the award on the theory that the evidence was sufficient to establish that the injury was sudden, unexpected, undesigned, and at a definite time and place. In those cases where compensation was denied, the time and place of injury were not limited to a single happening, although the injury or death was unexpected.

It may be possible by refined mental process to distinguish these cases on a different basis than the one I suggest, but

I rather believe not. I believe that by interpretation this court has extended the coverage beyond that anticipated by the legislature and at the same time has tried to limit coverage by conditions not reasonably inferable from the act. By such a process we are now confronted with the necessity of further stretching the legislative enactment or stopping at the present phase line.

Regardless of my ideas as to the proper interpretation of our act, for some 25 odd years this court has adopted a contrary interpretation. I must, therefore, accept the fact that many judges have believed the legislature intended to use the word "accident" in a sense that it denoted sudden and unexpected injury. The law, having become fixed over a period of years, the doctrine of stare decisis influences me to stand by the decided cases. However, it does not logically follow that I need extend the law which is fixed, definite and known. From what is said in the prevailing opinion, I need not emphasize the fact that the law as now announced by the majority of this court has not been previously fixed or known.

If we limit our act to the question under discussion and accept it as interpreted by our decisions, the act would in substance now read:

"Every employee who is injured by accident or by overexertion shall be entitled to compensation."

I do not believe it should be further extended to read:

"Every employee who is injured by injury shall be entitled to compensation."

To so amend the act opens the flood gates and every internal failure becomes an accident just because it happens.

PRATT, C. J., concurs in the views expressed by LATIMER, J.