427 P.2d 740

**James H. POWERS, Plaintiff,**

**v.**

**INDUSTRIAL COMMISSION of Utah and Salt Lake City Corporation, Defendants.**

No. 10587.

Supreme Court of Utah.

May 10, 1967.

Rawlings, Wallace, Roberts & Black, John L. Black, Salt Lake City, for plaintiff.

Phil L. Hansen, Atty. Gen., Homer Holmgren, City Attorney, Jack L. Crellin, Asst. City Atty., Salt Lake City, for defendants.

TUCKETT, Justice:

The plaintiff seeks a review of an order of the Industrial Commission denying him compensation for a disability suffered by him. The plaintiff claims that a pre-existing heart ailment was aggravated while he was performing duties as a fireman for Salt Lake City.

Evidence of record shows that the plaintiff was of the age of 33 years; that he served in the Army from 1954 to 1958, having received physical examinations yearly and a thorough physical examination upon discharge from the service.

The plaintiff was employed by the Salt Lake City Fire Department from August 16, 1959, and worked continuously from that date until April 7, 1964. Prior to entering employment with the City, the plaintiff was given a physical examination by the City. The plaintiff's employment was that of a combat fireman, and at the time of the incident here in question, he was on a swing shift which involved filling in at various fire stations for men off duty. He was on duty for a 24-hour period, and then he would be off for a period of 24 hours.

On September 24, 1963, the plaintiff had gone to bed at approximately 10:30 p. m. At approximately 1:39 a. m. the following morning, an alarm was received at the fire station. When an alarm is received at the station, the overhead lights come on followed by the ringing of a loud gong.

The plaintiff testified that when the call came in he felt a sense of anxiety; he quickly dressed and ran to the tailboard of the fire truck. It was a part of the operating procedure that the fire engine clear the station within a period of from 10 to 20 seconds. The plaintiff stated that upon reaching the tailgate of the engine, he felt nervous and excited. As the engine pulled out of the fire station, he experienced severe pains just above his diaphragm and extending upward into his shoulder. At about two blocks from the station he put his arm through a leather strap and held onto the bar at the rear of the truck. At that time he slumped and lost consciousness until the truck reached its destination. At the destination, the plaintiff sat down on the tailboard of the truck and his pain was so severe that it made him want to retch. He was taken back to the fire station in the car of the captain. The captain urged the plaintiff to go home immediately but he elected to stay at the station rather than disturb his wife.

The plaintiff continued to perform his duties as a fireman following the incident of September 25, 1963, until March 16, 1964.

After the incident of September 25, the plaintiff continued to suffer chest pains although the pains were less severe than on the night in question. On March 16, 1964, the plaintiff consulted Dr. Clyde F. Null, a local physician and a specialist in internal medicine and cardiovascular diseases. Dr. Null diagnosed plaintiff's condition as being atherosclerotic heart disease, commonly called hardening of the arteries, plus a congenital abnormality designated Wolff-Parkinson-White syndrome. Plaintiff continued to have increasing pain and distress culminating in his being hospitalized on April 7, 1964, after he had collapsed. The Wolff-Parkinson-White syndrome is unrelated to the atherosclerotic disease suffered by the plaintiff. This condition affects the rhythm of the heartbeat and is usually non-disabling. The plaintiff's condition progressed to such an extent that he is now unable to perform ordinary work; he cannot climb stairs; and he cannot perform ordinary activity without severe pain.

At the hearing before the Commission, Dr. Null was asked whether in his opinion the events that transpired on September 25, 1963, could have aggravated or precipitated the condition which he later found to exist in respect to the plaintiff's heart. The doctor was of the opinion that acute stress, strain, emotional aggravation and sudden abrupt exercise, maximum effort, could easily have precipitated an occlusion of a coronary artery, or could easily have great-

ly aggravated any underlying or pre-existing coronary artery difficulty or atherosclerosis. The doctor was further of the opinion that the plaintiff's having developed pain at that time was very strong evidence that he very likely did indeed aggravate the underlying disease, which must have been present prior to the development of his pain.

The Commission submitted the matter to a medical panel; the panel submitted its report to the Commission. The plaintiff objected to the report of the panel. The matter was again submitted to the medical panel which later submitted its second report. The second report is in part as follows:

Under date of March 18, 1965, this panel submitted to you its opinion regarding the above named case. This opinion was to the effect that in view of the fact that Mr. Powers was not examined between the episode of September, 1963, and March, 1964, the panel had no certain means of knowing his condition after this alleged accident. By description, however, and subsequent events, it appears that Mr. Powers had that night at least an anginal attack. The panel cannot exclude the possibility that he had a myocardial infarction, but the fact that he did not consult a doctor for six months makes this seem highly improbable to the panel. The panel found it hard to accept the idea that the occupational events of that evening and the attack of that

evening was sufficient to aggravate pre-existing coronary heart disease to the point of progressing and disabling heart disease. The panel felt that it was more probable in view of subsequent events that the progression was a natural part of the course of coronary artery disease. The panel felt that the records seemed to show that the events of that evening entailed no more emotional tension than in many other fires that had been the usual part of his occupational duties in the past four years.

The Commission adopted the panel report and denied plaintiff's claim for compensation. The final paragraph of the Commission's order is as follows:

The heart ailment was not reported for six months after the alleged incident. There was no unusual exertion or unusual emotional stress on the date the alleged accident occurred. In our opinion, the incident of April 7, 1964,[1] did not aggravate a pre-existing heart ailment; if any there was, and it surely would not result in damage to a normal heart.

It is therefore ordered that the claim be denied.

It will be noted that the opinion of the medical panel is based in part upon the fact that the plaintiff did not consult a doctor for six months after the incident which oc-

curred in September 1963. The panel also made the further finding:

The panel felt that the records seemed to show that the events of that evening entailed no more emotional tension than that in many other fires that had been the usual part of his occupational duties in the past four years.

The fact that there is no direct evidence that plaintiff suffered greater anxiety and emotional tension than usual is not determinative of the fact as to whether an industrial accident had occurred. The evidence is without conflict that the early morning of September 25, 1963, the plaintiff did in fact suffer an episode of a sudden illness which caused him to lose consciousness in responding to the fire alarm.

It will be noted that the Commission based its finding and conclusion in part upon the fact that the plaintiff's heart ailment was not reported for six months after the alleged incident. The Commission further found that there was no unusual exertion or unusual emotional distress on the date the alleged accident occurred. The Commission was further of the opinion that a pre-existing ailment was not aggravated.

The law is well settled that the aggravation or lighting up of a pre-existing disease by an industrial accident is compensable and that an internal failure

1. This appears to be in error as the incident in question appears in the record as September 25, 1963.

brought about by exertion in the course of employment may be an accident within the meaning of the act.[2]

█ It would appear that the decision of the Commission was not based upon the evidence before it. It further appears that the Commission applied "unusual strain" test in this case. We are of the opinion that in these cases we are only concerned with the proposition as to whether or not an ordinary exertion as contrasted to an unusual exertion caused the injury in question.

█ We are of the opinion that the decision of the Commission was not based upon the evidence and is, therefore, arbitrary, and that the order should be, and the same is, reversed. No costs awarded.

CALLISTER and HENRIOD, JJ., concur.

ELLETT, Justice (dissenting).

I dissent. The facts, save for medical conclusions, are not in dispute. The plaintiff, aged 33 years, was a fireman and responded in the usual manner to a fire alarm during the night of September 25, 1963. He claims to have lost consciousness during the run to the fire. When he arrived there, he had abdominal pains and nausea. He refused to go home but was taken back to the fire station without doing any fire fighting, where after going to the rest room and relieving himself of gas he said he felt better. He took some baking soda and next morning said he felt all right.

It was plaintiff's contention before the Industrial Commission that he suffered a heart attack while riding on the truck and that said attack was due to the exertion caused by hearing the gong sound to awaken the firemen and the rapidity with which he got dressed, and as a result thereof he was subsequently disabled.

He did not consult a doctor until March 16, 1964, when he went to Dr. Null, an internist, for treatment. However, he continued to work until April 7, 1964, when he became disabled.

Dr. Null diagnosed his condition as having a Wolff-Parkinson-White syndrome together with atherosclerotic heart disease (hardening of the arteries) and hypercholesterol condition (a high blood fat level). Dr. Null further found that the disabling pains suffered by the plaintiff were due to an insufficient blood supply to the heart muscles.

On April 7, 1964, plaintiff had a collapse, but the doctor could not find any severe injury to heart muscles.

As a convenience to plaintiff, the referee for the Industrial Commission permitted Dr. Null to testify before the medical panel

2. Jones v. California Packing Corp., 121 Utah 612, 244 P.2d 640; Purity Biscuit Co. v. Ind. Comm., 115 Utah 1, 201 P. 2d 961.

had made its report. Later the chairman of the medical panel, Dr. Viko, a well known heart specialist, testified in this matter. Dr. Viko and the medical panel accepted the diagnosis of Dr. Null as being correct.

Another fact considered by the medical panel and by Dr. Viko was that the plaintiff had two brothers with heart ailments at ages 40 years and 37 years.

Dr. Null testified that the events of September 25, 1963, "very likely did indeed aggravate the underlying heart disease, which must have been present prior to the development of his pain." He further testified on cross-examination, "I don't think that one would state that there is an accident which brought this about, but I certainly do believe that the history as related—that is, that the development of the pain for the first time, the sudden collapse episode, and these factors—are very likely related to the acute exertion of that moment."

Dr. Viko, the heart specialist, testified that the diminished consciousness which plaintiff had while riding on the rear end of the speeding fire truck could be due to the Wolff-Parkinson-White syndrome. He further gave testimony to the effect that there was nothing in the record to warrant a conclusion that plaintiff on September 25, 1963, had a myocardial infarction (the change in the heart muscles resulting from a plugged blood vessel to the heart) or a preceding coronary thrombosis (the plugging of one of the blood vessels which supply blood to the heart). Further, he testified that plaintiff underwent an episode of angina pectoris on September 25, 1963, which was the result of fatty deposition in the blood vessels.

The Industrial Commission had the problem of deciding whether the disability of the plaintiff was due to a heart attack occurring on September 25, 1963, as a result of the work he was required to do or whether it was a result of the disease called hardening of the arteries. In other words, was there a causal connection between the disability and the occupational events?

The evidence was in conflict. Should the Industrial Commission find as testified by Dr. Null or by Dr. Viko? I think it could have found either way.

Section 35–1–85, U.C.A.1953, is as follows:

After each formal hearing, it shall be the duty of the commission to make findings of fact and conclusions of law in writing and file the same with its secretary. The findings and conclusions of the commission on questions of fact shall be conclusive and final and shall not be subject to review; * * *.

This court has spoken too many times explaining this section to require any further citation. This court should not substitute its findings for those of the Commission

where there is competent evidence to support the findings as made.

The order made by the Industrial Commission is supported by competent evidence, and it should be affirmed.

CROCKETT, C. J., concurs in the dissenting opinion of ELLETT, J.