454 P.2d 283

### REDMAN WAREHOUSING CORPORATION and Employers Mutuals of Wausau, Plaintiffs,

v.

### The INDUSTRIAL COMMISSION of Utah and Quis L. Johnson, Defendants.

### No. 11424.

Supreme Court of Utah.

May 2, 1969.

Frank J. Allen, of Clyde, Mecham & Pratt, Salt Lake City, for plaintiffs.

Vernon B. Romney, Atty. Gen., Mark A. Madsen, Asst. Atty. Gen., Salt Lake City, for defendants.

HENRIOD, Justice:

Appeal from a Commission award incident to a back ailment. Reversed.

Following is an abstract of the evidence as developed by the applicant, the only witness testifying:

Mr. Johnson had been employed by the Redman trucking outfit *for 11 years*. Dur-
ing that period he experienced two injuries: About three years before the present incident, he injured his back when he fell on his hip while pushing a piano into a van, suffering great pain, but which was temporary, requiring no layoff. Again, about six months before, while loading furniture, he stepped off a truck's tail gate, suffering sudden pain, which injury was treated by a chiropractor, resulting in a two-week absence from work, for which he was awarded compensation. He further testified that he had had no other difficulty with his back other than backache once in a while from straining.

On June 17, 1967, at Salt Lake City, he loaded a van with furniture. There was nothing unusual about his health at that time. He drove the van to Winnemucca, Nevada, 360 miles away, and slept in the van there that night, all this without incident, painwise or otherwise. Next morning he drove to Baxter, California, without experiencing any back discomfort. He left the van for a coffee break. After he stopped he noticed his back was hurting a little bit on the left, sort of a dull but not shooting pain, but nonetheless continuous, extending not too much in the thigh, but along the length of his left leg. He continued the same day to San Francisco, where he helped to unload the van, but hired others to help him. He did not see a doctor in San Francisco, but the pain persisted during the time he drove the

truck back to Salt Lake City, where he arrived on June 23rd. There was not much pain when he laid down, but otherwise the pain worsened. On July 7th he was hospitalized for a month, incident to surgery involving a herniated disc. As a result he was unemployed from June 23rd and was unemployed at the time of the hearing in this case on November 20th. At that time Mr. Johnson testified he didn't "feel too bad," that it did not bother him to sit for extended periods, to lie down, or to walk, and he has had no pain since the operation.

On cross-examination he testified that occasionally he experienced low back pain over quite a period of years, had gone to chiropractors on account of pain not related to any injuries he suffered at his work. After his injury on the job six months before the present incident, he returned and did the same kind of work as before, experiencing no back discomfort for four ensuing months. He stated he was familiar with the freeways to San Francisco and that they were pretty good.

This matter was referred to a three-man medical panel for a report as to the medical aspects of this case.[1] It came up with the following, among other things:

(1) It is a reasonable medical probability that lifting and loading the van prior to departure from Salt Lake had no

significant effect on his disc protrusion.

(2) As a reasonable medical probability the mere sitting and driving a truck precipitated the difficulties for which the applicant was operated on.

(3) The activity of sitting and driving the truck *could* aggravate a pre-existing condition. It appears that in retrospect there had been some signs and symptoms of disc degeneration in the past because he has had intermittent low back difficulty.

At this juncture we venture the observation that the conclusions in the panel report seem to reflect a degree of inconsistency, or at least confusion. At once it says that, medically, the lifting and loading of the van had no significant effect on the herniation but that nonetheless the mere sitting and driving for about a day, (with a night's sleep intervening), did. This in spite of the fact he had been performing exactly the same kind of work he had performed continuously for 11 years, experiencing but two minor injuries, losing only two weeks on account thereof during the 11 years that he had driven the vans. With such a difficult-to-perceive appraisal found in the report, it then volunteered by way of gratuity that the Baxter incident could have been the breaking point of a pre-existing condi-

---

1. In its report it was said Johnson was released for work by his doctor on Jan. 15, 1968, and by Mar. 5, 1968, was continuing his employment.

tion of disc degeneration *aggravated* by the *sitting and driving* alone. In other words the panel report said 1) that lifting and loading the furniture into the van caused nothing; 2) that the sitting and driving caused everything—the herniation, and 3) that it could have lighted up or aggravated a pre-existing condition, the nature and extent of which was not reflected anywhere in the record, save, remotely and with faint possibility, by some sort of stretch of the imagination someone might so conclude when 41-year-old Mr. Johnson, having been asked if there were "any other occasions when you experienced any difficulty with your back?" he answered "No, not that I can recall, other than just a backache once in a while, from straining or something."

The upshot of the above simply is this: That the panel report, although admissible as evidence, absent objection thereto within 15 days,[2] has little or no weight as evidence; that the "accident" that caused the injury was "sitting and driving." The rest of the report says lifting and loading was no factor, and that a pre-existing condition, aggravated by the sitting and driving, "could" have been the cause. The latter conclusion is quixotic and pure conjecture completely unsupported by any credible, competent evidence.[3] The panel's con-

clusion No. 2, is just what it purports to be—a mere conclusion. It is unsupported by credible, competent evidence,—even less so than conclusion No. 3 anent aggravation. Nonetheless the Commission adopts the panel's conclusion No. 2 by fiat and bases its award on that which has no basis in fact that is reflected in the record. There is nothing in this record that shows any unusual event, or "accident," if you please, justifying compensability within the nature, intent or spirit of the workmen's compensation act. To conclude otherwise would insure every truck driver, every railroad engineer, every airplane pilot, and a lot of others, against a physiological malfunction or physical collapse of any of hundreds of human organs, completely unproven as to cause, but compensable only by virtue of the happenstance that the malfunction, collapse or injury occurred while the employee was on the job, and not home or elsewhere.

For aught we know from this record there may have been any number of reasons why the rupture occurred when and where it did, based on circumstances quite foreign to the claimant's employment. In other words there is a complete absence of competent proof here to support *any* finding with respect to the *cause* of the rupture, save by guesswork. In other words

---

2. Title 35–1–77, Utah Code Annotated 1953.

3. See statement of principle on appellate review: Vause v. Indust. Comm., 17 Utah 2d 217, 407 P.2d 1006 (1965) Syll. 4.

the claimant has not met the onus of proving an "accident" in the course of his employment that "caused" the "injury" of which he complains, which burden is his. As a matter of fact the record reflects that up to the time of the pain's inception, applicant was doing exactly what he had been doing continuously for 11 years prior thereto, and his own testimony clearly negated any theory of causation by merely "sitting and driving," or of a pre-existing condition that was lighted up by the "mere sitting and driving" on a highway with which the applicant was familiar and which was pretty good.

We must pay great respect to a panel of medical experts, but they are not the ultimate fact finders. Essentially they are reporters of the medical aspects of a given case in aid of the Commission's appraisal and weighing of all the facts. The members of the panel in this case had the previous record before them and simply recited in their report facts already adduced at the hearing,—none of which was contested. We simply believe that the conclusions reached from such facts were not supported by such uncontested facts and amounted to assumptions indulged dehors the record. In adopting the panel report, we believe the Commission compounded not only its gratuitous assumptions but also the unfounded conclusions that sprang therefrom.

4. 14 Utah 2d 276, 382 P.2d 414 (1963).

In concluding that the circumstances in this case did not constitute an "accident" that *caused* an "injury" in the workmen's compensation sense, we point to several of our own cases and other authorities.

In Pintar v. Industrial Commission,[4] a case we think apropos here, we sustained noncompensability where the applicant, in March, while timbering in a mine, felt a sharp pain as a result of which he was hospitalized for four days, and again in July he hurt his back when pushed against the mine wall by a drill machine, returning to work the next day, and working thereafter until October, when he worked with a "roof driver," which caused pain in his chest, shoulder and back, causing a discontinuance of work, followed by filing of a claim for compensation. We said, after reciting the facts, that it is "a prerequisite to compensation that his disability be shown to result, not as a gradual development because of the nature or conditions of his work, *but from an identifiable accident* or accidents in the course of his employment."

In Carling v. Industrial Commission,[5] the applicant, for many years had a hearing impairment, found to have resulted gradually. He said that on a day certain, while pounding pipes with an air gun for 20 to 30 minutes, he suddenly found that other noises around him were dulled or lessened, assigning the noise on that day as the onset or

5. 16 Utah 2d 260, 399 P.2d 202 (1965)

accident justifying an award. We said in sustaining noncompensability that for the purpose of the Act "It connotes an unanticipated, unintended occurrence different from what would normally be expected to occur in the usual course of events."

The Carling case was cited with approval and some of its language quoted in Mellen v. Industrial Commission,[6] where a roofer suffered severe chest pains while hammering cement nails into the roof with a six-pound hammer, resulting in hospitalization for over three weeks for a heart attack. Although the onset on the roof was sudden, a medical panel concluded that it was the result of a degenerative heart condition that could have occurred while the man was asleep or otherwise, on or off the job.

Petitioner strongly urges that Jones v. California Packing Corp.[7] supports its position that the facts in the instant case reflect an "accident" calling for compensation under the Act, as does Purity Biscuit Co. v. Industrial Commission.[8] The Jones case has no kinship here, since it was an exertion case involving a death by heart failure as well as involving the continuing debate among medical men as to whether exertion and/or the degree thereof is a factor in causing heart failure. As to the Purity Biscuit case, it has been a nub of contention in legal circles, but in its 20-year life span it has not been overruled apodictically, nor given nourishment by an approbation. Purity enjoys the unique and doubtful distinction of being a living corpse.

CALLISTER, TUCKETT, and ELLETT, JJ., concur.

CROCKETT, Chief Justice (concurring).

I concur with the main opinion except as to the last paragraph. I do not join in the comments about the Jones and Purity Biscuit cases. They are different from the instant case and speak for themselves.