**SABO'S ELECTRONIC SERVICE and State Insurance Fund, Plaintiffs,**

v.

**Carl E. SABO, Defendant.**

**No. 17396.**

Supreme Court of Utah.

Feb. 19, 1982.

---

2.  Utah, 636 P.2d 470 (1981).

3.  18 Utah 484, 485, 56 P. 22 (1899).

James R. Black, Salt Lake City, for defendant.

David L. Wilkinson, Atty. Gen., Frank V. Nelson, Asst. Atty. Gen., Salt Lake City, for plaintiffs.

HALL, Chief Justice:

This is an appeal from a decision of the Industrial Commission which granted workmen's compensation benefits to defendant Carl E. Sabo.

Defendant owns and operates a sole proprietorship business in Moab, Utah, known as Sabo's Electronic Service. In addition to defendant and his wife, the business employs a secretary and a technician. The business consists of a store located in a shopping center and a warehouse located behind the Sabos' personal residence.

Prior to going to the store on June 5, 1979, defendant was loading some merchandise into his service bus from the warehouse. As he prepared to lift a box of 12 clock radios, defendant suffered pain in his back. Defendant gives the following account of the events leading up to his injury:

I had loaded a couple of boxes, and I was getting ready to load another one. There was one of them that was completely on the floor, down on the cement floor, and I bent over and moved it a little bit to get my fingers underneath it. Then, in straightening, my back grabbed, and I had an awful pain in my back. So I tried to straighten up, and I couldn't do it.

Later, in response to questions asked by his own attorney, defendant explained precisely how he suffered lower back pain:

Q. ... How did you go about getting your fingers underneath the box?

A. (Demonstrating) It was sitting on a concrete floor, and I pushed it and lifted at the same time.

Q. Did you tilt it, or did you—

A. Well, I had to tilt it a little bit to get my fingers under it. I had pushed it with my right hand, putting my left fingers under it, and that's when the back cracked.

On June 6, 1979, defendant was admitted to the local hospital, where he was diagnosed as suffering from a herniated disk. On June 12, defendant discharged himself to the care of a chiropractor for further treatment. Defendant testified that surgery was recommended to treat the injury, but that he could not afford it. Defendant has continued to work at the business, although he claims he is no longer able to do much more than answer the telephone, order and sell merchandise, and give advice to the technician.

In response to questions about pre-existing back problems, defendant testified that in 1951 he was working in a mine when he slipped and fell, hurting his back. He saw a chiropractor on that occasion and at various times since because "[t]he job I do requires a lot of lifting, and sometimes I had a back pain." In 1975, defendant consulted a doctor about shoulder and neck pains. The doctor discovered that defendant suffered from arthritis and recommended that he take steroid shots. Defendant received these shots regularly thereafter, and received one on June 4, 1979, the day before the incident in question.

Following a hearing on December 10, 1979, the administrative law judge found, *inter alia*, as follows:

The activities of this morning were not unusual and were not strenuous in any

way. He had only loaded a couple of boxes and was doing the same things that he frequently did in connection with his employment in loading boxes which usually required bending over to pick them up. He had done this same thing many times in the past.

\*　　\*　　\*　　\*　　\*　　\*

In order to recover workmen's compensation benefits, the applicant must have incurred an injury as the result of an accident during the course of his employment. Though it is clear that the applicant was engaged in his regular employment and that there was an injury, we cannot find that there was an accident in the sense contemplated by the Workmen's Compensation statutes.... [W]e cite the case of *L. D. S. Church v. Thurman* [Utah, 590 P.2d 328 (1980)] and find here, as found in that case, that "there is nothing in his testimony that shows anything unusual about his activities, that shows any unusual exertion or strain or that shows any contact with objects or a fall. There was simply nothing different about his activities on the day in question than any other such working day." It is obvious that the back failure could have occurred at any time while engaged in any activity on or off work since our ordinary day to day activities require us to bend over, turn, twist, and lift many times and in many different ways.

Since it is the function of the Administrative Law Judge to determine whether or not an accident occurred and we have herein determined that there was no accident there can be no reason to send the matter to a medical panel for further evaluation.

Defendant thereafter filed a "request for rehearing" with the Industrial Commission. On April 28, 1980, the Commission remanded the case to the administrative law judge with instructions to refer the case to a medical panel.[1]

One Dr. Momberger was appointed to make a "single impartial evaluation" of defendant in lieu of the usual three-member panel. Following his examination of defendant and review of the record, Dr. Momberger found as follows:

1. Period of time the applicant has been temporary totally disabled would be from the date of injury for approximately 4 months. This based primarily on the history and the fact that he continues with very overt neurologic problems.

2. The patient's condition has not stabilized sufficiently so percentage of permanent physical impairment can be determined. I estimate however that it would be in the percentage of 20% because of very overt evidence of nerve root damage. His permanent physical impairment is resulting entirely from the incident which he alleges to. I find no evidence of any previous existing condition.

On August 27, 1980, the administrative law judge adopted the findings of Dr. Momberger and ordered payment to defendant of "$2,395.81 for temporary total disability compensation and $8,174.40 for permanent partial impairment benefits."

Plaintiffs filed a "motion for review" with the Industrial Commission, pointing out alleged errors in the decision of the administrative law judge. The Commission denied said motion and affirmed the judge's ruling of August 27, 1980. Thereafter, plaintiffs filed a "petition for writ of review" with this Court.

Plaintiffs first contend that the benefits were erroneously awarded inasmuch as there was no "*accident* arising out of or in the course of [defendant's] employment." (Emphasis added.)[2] Inasmuch as this point is dispositive, we need not address plaintiff's alternative contention, to wit, that even if a compensable accident did occur, the award of permanent partial disability and a final determination of the extent of pre-existing impairment should be postponed pending completion of the recommended medical treatment.

---

1. Based upon the case of *Lipman v. Industrial Commission*, Utah, 592 P.2d 616 (1979).

2. U.C.A., 1953, 35–1–45.

In the recent case of *Kaiser Steel Corp. v. Monfredi*,[3] we reviewed the many authorities which define the scope of review in Industrial Commission cases and reaffirmed that this Court's inquiry is limited to:

... whether the Commission's findings are "arbitrary or capricious," or "wholly without cause" or contrary to the "one [inevitable] conclusion from the evidence" or without "any substantial evidence" to support them. Only then should the Commission's findings be displaced.

In *Monfredi*, we also reviewed a long series of back injury cases wherein the Court has determined the meaning of the term "accident" for workmen's compensation purposes. We concluded that the meaning of the word "accident" is a question of law and that whether the evidence conforms to that meaning is a question of fact. Therefore, the initial decision as to whether an accident has occurred is left to the Commission. In difficult cases, the findings of a medical panel may assist in determining whether the injury was caused by an accident, and hence when liability is denied, an applicant is entitled to have his case referred to a medical panel.[4] It is the Commission, however, and not the medical panel, that has the ultimate responsibility of deciding whether an *identifiable* accident has occurred.[5]

Accident has been broadly defined as "an unanticipated, unintended occurrence different from what would normally be ex-

pected to occur in the usual course of events."[6] The accident must result in an injury which is causally related to the work being done.[7] The mere showing of injury does not *ipso facto* mean that a compensable accident has occurred. The point was driven home in the case of *Redman Warehousing Corp. v. Industrial Commission*,[8] where the following statement was made:

There is nothing in this record that shows any unusual event, or "accident," if you please, justifying compensability within the nature, intent or spirit of the workmen's compensation act. To conclude otherwise would insure every truck driver, every railroad engineer, every airplane pilot, and a lot of others, against a physiological malfunction or physical collapse of any of hundreds of human organs, completely unproven as to cause, but compensable only by virtue of the happenstance that the malfunction, collapse or injury occurred while the employee was on the job, and not home or elsewhere.

This analysis was recently applied in the cases of *Church of Jesus Christ of Latter-Day Saints v. Industrial Commission and Thurman*[9] and *Farmers Grain Co-op v. Mason*.[10]

In *Thurman*, the applicant followed his typical routine of setting up chairs and tables in preparation for a weekly scheduled meeting at a church meetinghouse. He engaged in only his usual activities. After

3. Utah, 631 P.2d 888 (1981), to be distinguished on its facts from the instant case, the workman therein having suffered from a job-induced, pre-existing condition which was aggravated while scaling rock from the roof of a mine and shoveling it onto a conveyor belt. Such falls within what this Court has referred to as a "climax" due to "exertion, stress, or other repetitive cause ... in such manner as to properly fall within the definition of an accident ...." *Carling v. Industrial Commission*, 16 Utah 2d 260, 399 P.2d 202 (1965).

4. *Lipman v. Industrial Commission, supra*, note 1.

5. In *Pintar v. Industrial Commission*, 14 Utah 2d 276, 382 P.2d 414 (1963), this Court held that an applicant must show that his disability resulted "not as a gradual development be-

cause of the nature of conditions of his work, but from an identifiable accident or accidents in the course of his employment."

6. *Carling v. Industrial Commission, supra*, note 3.

7. *Painter Motor Co. v. Ostler*, Utah, 617 P.2d 975 (1980); *Schmidt v. Industrial Commission*, Utah, 617 P.2d 693 (1980); see also, *Bountiful Brick Co. v. Giles*, 276 U.S. 154, 48 S.Ct. 221, 72 L.Ed. 507 (1928) affirming 68 Utah 600, 251 P. 555 (1926).

8. 22 Utah 2d 398, 454 P.2d 283 (1969).

9. Utah, 590 P.2d 328 (1979).

10. Utah, 606 P.2d 237 (1980).

becoming somewhat tired, he sat down and rested for a short time. Upon hearing the telephone ring, he stood suddenly and for the first time, felt a sharp pain in his lower back. He was later diagnosed as having a herniated disk that ultimately required an operation. We reversed an award to the applicant Thurman with the following language:

> The only facts relating to the claimed accident were presented by the testimony of Thurman, and there is nothing contained therein that warrants a conclusion that an accident occurred. There is nothing in his testimony that shows anything unusual about his activities that shows any unusual exertion or strain, or that shows any contact with objects or a fall. There was simply nothing different about his activities on the day in question than on any other such working day.

In *Farmers Grain*, the applicant had a pre-existing back injury but he had been able to continue his work as a long-haul truck driver until 1975. Then, on two different occasions, he experienced severe pain while unloading truck loads of 100-pound bags of whey. Ultimately, surgery was required. The medical panel found that the occurrences aggravated spinal conditions which predated the industrial claims. We vacated and set aside the order of the Commission awarding benefits. In so doing, we relied upon the analyses of *Thurman* and *Redman* and also quoted the following pertinent language of *Continental Baking Co. v. Industrial Commission* : [11]

> To render an injury accidental within the Compensation Law does not require that the strain be such that other men would not attempt it, or would anticipate probable injury therefrom. It simply means that the effort exerted, considering the position in which the workman was put by the work being done at the instant of the injury, was such that an injury, unanticipated and unforeseen, resulted to the

workman. And, when there appears a direct connection between the personal injury as a result, and some happening in the employment as a proximate cause, an injury as the result of an accident in employment is shown, and the right to compensation is fixed.

In the instant case, after the administrative law judge had ruled that an accident had not occurred under the analysis of *Thurman*, the Industrial Commission ordered that the case be referred to a medical panel. There is nothing in the doctor's evaluation which would justify a change from the initial decision that no "accident" occurred. The mere fact that defendant's impairment resulted (in the words of Dr. Momberger) "entirely from the incident which he alleges to" should not imply that a compensable accident has occurred, as defined in this opinion. It appears to be mere coincidence that defendant's injury or malfunction occurred at work.[12] Defendant bears the burden of showing otherwise.[13] Proof of the causal relationship of duties of employment to unexpected injury is simply lacking. Stated in terms of the standard of review hereinabove enunciated, the Commission's conclusion that an accident occurred is without any substantive support in the record.

The decision of the Industrial Commission granting benefits to defendant is therefore reversed. No costs awarded.

STEWART, OAKS and HOWE, JJ., VeNOY CHRISTOFFERSEN, District Judge, concur.

DURHAM, J., does not participate herein.

---

11. 92 Utah 438, 69 P.2d 268 (1937).

12. The injury here could just as easily have occurred at home or elsewhere while defendant was bending over doing any number of things.

13. *Redman Warehousing Corp. v. Industrial Commission, supra,* note 8; see also, *Lipman v. Industrial Commission, supra,* note 1 as to the standard of proof.