**BILLINGS COMPUTER CORPORATION, Utah State Insurance Fund, and Second Injury Fund, Plaintiffs and Appellants,**

v.

**Dora TARANGO, Defendant and Respondent.**

**No. 18931.**

Supreme Court of Utah.

Nov. 10, 1983.

---

James R. Black, Susan B. Diana, Gilbert Martinez, Salt Lake City, for plaintiffs and appellants.

Thomas R. Patton, Provo, for defendant and respondent.

HALL, Chief Justice:

This is a review of an order of the Industrial Commission awarding workmen's compensation benefits to Dora Tarango for injuries sustained in an alleged accident while employed by Billings Computer Corporation (hereinafter "Billings"). We reverse.

The essential facts of the matter are not in dispute. Dora Tarango is employed by Billings as a subassembly worker, her duties consisting of soldering small a.m. meters with wires while sitting at a "station." On April 28, 1981, in the course of her typical work routine, Mrs. Tarango ran out of one of the materials used in the soldering process (to wit: a small "connector" measuring one-half inch by one-half inch) and had to get up from her station and walk a distance of some four stations to a rack where a supply of the connectors was kept. As she returned to her station, she dropped several of the connectors onto the floor. When she knelt down to retrieve them, she suffered pain in her right knee. Her account, as given at the hearing before the Industrial Commission, of precisely how the injury to her knee occurred is as follows:

A. ... And I knelt down, bent, and knelt down. And when I—my knee, when the knee contacted the floor is when I had pain.

Q. ... What type of pain was it?

A. How can I explain it. Just the pain is when I knelt down to pick up the connectors. Contact on the floor and I felt the sharp pain, about like the same time something there is broken, like it bent. It is kind of hot, warm. And then I started to get up, and sit on my chair. And there was just pain there.

Q. Okay, did you kneel down in the normal way that you would kneel down any time you are going to pick up something?

A. Yes.

Q. And the difference between you kneeling on this occasion and any other times that you would kneel to pick something up on the ground was that you experienced pain when you placed your knee on the ground, is that right?

A. When I placed the knee on the floor, when I had contact.

Q. And how you just did it, is that the same procedure that you were following that day?

A. I am pretty sure it was.

Q. You didn't fall to the ground then?

A. No, I didn't fall, no.

Q. So you didn't fall on the knee?

A. No, I didn't fall.

Q. You just placed your weight on the knee?

A. Yes, you know.

On May 18, 1981, Mrs. Tarango underwent lateral arthrotomy surgery on her right knee and was unable to return to work at Billings until July 20, 1981. A claim for workmen's compensation benefits for this period of convalescence was filed by her and ultimately heard by an administrative law judge. In the judge's decision, which was rendered on September 28, 1982, it was determined that Mrs. Tarango's injury was the result of a compensable accident and that she should be awarded benefits.

A timely motion for review was filed by the plaintiffs with the Industrial Commission. This motion was denied, and the administrative law judge's decision was thus sustained. Subsequently, a petition for a writ of review was filed with this Court pursuant to U.C.A., 1953, § 35–1–83.

This Court's time-honored scope of review in Industrial Commission cases was recently reaffirmed in the case of *Sabo's Electronic Service v. Sabo:*[1]

[T]his Court's inquiry is limited to: ... whether the Commission's findings are "arbitrary or capricious," or "wholly without cause" or contrary to the "one [inevitable] conclusion from the evidence" or without "any substantial evidence" to support them. Only then should the Commission's findings be displaced.[2]

■ The sole issue presented by this appeal is one that has been dealt with by this Court on a number of recent occasions under very similar circumstances. The issue is whether there is sufficient evidence in the record to support the finding that the claimant, Mrs. Tarango, sustained an "accidental injury" in the course of her employment.[3] The most recent pronouncements of this Court relative to this issue were made in the *Sabo* case. There, in addition to our reaffirmance of the established scope of review, we also reaffirmed our view of the term "accident" as it is used in the context of compensation cases:

Accident has been broadly defined as "an unanticipated, unintended occurrence different from what would normally be expected to occur in the usual course of events." The accident must result in an injury which is causally related to the work being done. The mere showing of injury does not ipso facto mean that a compensable accident has occurred.[4]

Based on these principles, we concluded in *Sabo* that the Commission's award to a claimant who had injured his back while routinely lifting a box of supplies into his truck should be reversed. We stated:

The mere fact that defendant's impairment resulted (in the words of Dr. Momberger) "entirely from the incident which he alleges to" should not imply that a compensable accident has occurred. ... *It appears to be mere coincidence that defendant's injury or malfunction occurred at work.* Defendant bears the burden of showing otherwise. Proof of the causal relationship of duties of employment is simply lacking.[5]

(Emphasis added.) We further reasoned that "the injury here could just as easily have occurred at home or elsewhere while defendant was bending over doing any number of things."[6]

■ We consider this reasoning to be dispositive of the instant matter. The fact that Mrs. Tarango's injury occurred while

1. Utah, 642 P.2d 722 (1982).

2. *Id.* at 725, citing *Kaiser Steel Corp. v. Monfredi,* Utah, 631 P.2d 888 (1981).

3. Under U.C.A., 1953, § 35–1–45, a prerequisite to the receipt of a compensation award is proof that the injury occurred "by accident arising out of or in the course of his employment."

4. *Supra* n. 1, at 725.

5. *Supra* n. 1, at 726.

6. *Id.,* n. 12.

at work was mere coincidence, inasmuch as the events that led to her injury (to wit: dropping small objects and kneeling to pick them up) were very commonplace and "usual" and could have occurred practically anywhere at anytime.

The line of decisions primarily relied upon in *Sabo* includes *Redman Warehousing Corp. v. Industrial Commission*,[7] *Church of Jesus Christ of Latter-Day Saints v. Industrial Commission & Thurman*,[8] and *Farmers Grain Co-op v. Mason*.[9] We consider these cases to be equally in point and dispositive here.

The record in the present matter reveals circumstances very similar to those existing in the foregoing cases. By her own testimony, Mrs. Tarango established that the circumstances which precipitated her injury were in no way unusual or "accidental," as that term is explained above. As noted previously, her testimony of these events was that she knelt down in the normal and usual way and that she did not fall and strike her knee on the floor, but rather placed it on the floor without abrupt contact. In light of these facts, we conclude that Mrs. Tarango did not meet her burden of showing a compensable accident and that the Industrial Commission's conclusion to that effect was "contrary to the 'one [inevitable] conclusion from the evidence.'"[10] We therefore vacate the Commission's order and award of benefits.

STEWART, HOWE, OAKS and DURHAM, JJ., concur.

---

7. 22 Utah 2d 398, 454 P.2d 283 (1969).

8. Utah, 590 P.2d 328 (1979).

9. Utah, 606 P.2d 237 (1980).

10. *Supra* n. 2.