**FRED MEYER and/or Liberty Mutual Insurance Company, Petitioners,**

v.

**The INDUSTRIAL COMMISSION OF UTAH, the Employers' Reinsurance Fund, and Lileth Shelley, Respondents.**

No. 890698–CA.

Court of Appeals of Utah.

Oct. 31, 1990.

Michael E. Dyer (argued), Lloyd A. Hardcastle, Richards, Brandt, Miller & Nelson, Salt Lake City, for petitioners.

Phillip B. Shell (argued), Day & Barney, Murray, for respondent, Shelley.

## OPINION

Before BENCH, GARFF, and CONDER.[1]

BENCH, Judge:

Petitioners Fred Meyer and Liberty Mutual Insurance Company, Fred Meyer's insurer, (collectively Fred Meyer) petition this court for review of an Industrial Commission order granting workers' compensation benefits to respondent Lileth Shelley. We affirm.

Shelley worked for Fred Meyer and its predecessor, Grand Central Stores, as a warehouse worker for over thirteen years. On May 3, 1985, Shelley was injured while "pulling" merchandise, boxes of shower curtains, from a warehouse shelf. Each box weighed approximately thirty-five pounds and was located on a shelf approximately six feet high. To reach the boxes, Shelley climbed a ladder that had a safety rail around the top. In order to remove the boxes from the shelf, Shelley lifted them approximately twelve to eighteen inches up and over the railing on the ladder, twisted around and dropped them to the floor. After dropping three boxes to the floor, she climbed down the ladder and began to remove the shower curtains from the boxes

---

1. Dean E. Conder, Senior District Court Judge, sitting by special appointment pursuant to Utah Code Ann. § 78–3–24(10) (Supp.1990).

at which time she began to feel the onset of pain in her lower back. A few minutes later, Shelley bent over to pick up a container into which she had sorted the curtains. This container weighed approximately fifty pounds. As Shelley pulled on the container to pick it up, she felt an excruciating pain in her lower back.

Shelley had previously sustained two lower back injuries on the job while working for this same employer. The first occurred in 1975 while she was lifting a thirty-five to forty pound case of shoes. The second occurred in 1978 while she was pulling a box of underwear out of a tightly packed carton. Shelley's medical history gives no indication of any back problems prior to the foregoing work-related injuries and does not show any other injuries to her back.

■ The administrative law judge (A.L.J.) that heard Shelley's petition concluded that since Shelley had a preexisting condition, she was required to meet the higher standard for proving legal causation adopted in *Allen v. Industrial Commission*, 729 P.2d 15 (Utah 1986).[2] The A.L.J. further concluded that Shelley failed to meet the higher standard of *Allen* and denied benefits for failure to prove legal causation.

Shelley filed for review of the A.L.J.'s decision. The Commission reversed and granted benefits, holding that the A.L.J. should not have applied the higher standard of legal causation established in *Allen* because Shelley's preexisting condition resulted from work-related injuries suffered while working for the same employer.

## STANDARD OF REVIEW

Inasmuch as these proceedings were commenced in 1987, prior to the effective date of the Utah Administrative Procedures Act (UAPA),[3] we look to the prior case law to determine the proper standard of review.

As to findings of fact, our review is deferential. "[T]he reviewing court's inquiry is whether the Commission's findings are 'arbitrary or capricious,' or 'wholly without cause' or contrary to the 'one inevitable conclusion from the evidence' or without 'any substantial evidence' to support them. Only then should the Commission's findings be displaced." *Kaiser Steel Corp. v. Monfredi*, 631 P.2d 888, 890 (Utah 1981).[4]

■ As to questions of law, we apply a correction-of-error standard affording the agency no particular deference. *Hurley v. Board of Review of the Indus. Comm'n*, 767 P.2d 524, 526 (Utah 1988). Statutory interpretation and legislative intent are deemed questions of law, *id.* at 527, unless the provision constitutes "special law." *Utah Dept. Admin. Servs. v. Public Serv. Comm'n*, 658 P.2d 601, 610 (Utah 1983). We likewise view questions of common law interpretation and judicial intent as questions of law which we are well suited to address. We therefore give no particular deference to the Commission's conclusion that the higher standard of legal causation adopted in *Allen* did not apply to Shelley.

2. We note that the A.L.J.'s findings of fact do not clearly identify the preexisting condition. It is, however, apparent from a review of the record that despite the various conflicting diagnoses as to other possible preexisting conditions, all of the doctors concurred that Shelley suffered from a preexisting herniated disc. Since the medical nature of Shelley's preexisting condition is not critical to the issue before us, we assume for the sake of discussion that Shelley's preexisting condition was in fact a herniated disc. We wish to emphasize, however, that for purposes of review, the medical identity of the preexisting condition is a material finding that must be made before the *Allen* test may be applied.

3. Utah Code Ann. § 63–46b–22(2) (Supp.1990) provides:

Statutes and rules governing agency action, agency review, and judicial review that are in effect on December 31, 1987, govern all agency adjudicative proceedings commenced by or before an agency on or before December 31, 1987, even if those proceedings are still pending before an agency or a court on January 1, 1988.

4. For a discussion of UAPA's effect on our review of agency findings of fact, see *Grace Drilling Co. v. Board of Review of the Industrial Commission*, 776 P.2d 63, 66–68 (Utah Ct.App. 1989).

Rather, we review the Commission's legal conclusion for correctness.

"Furthermore, to facilitate the purposes of the legislation, the Workers' Compensation Act is to be liberally construed and any doubt as to compensation is to be resolved in favor of the applicant." *USX Corp. v. Industrial Comm'n,* 781 P.2d 883, 886 (Utah Ct.App.1989); *Kaiser Steel Corp.,* 631 P.2d at 892; *McPhie v. Industrial Comm'n,* 567 P.2d 153, 155 (Utah 1977).

Guided by these standards, we must first determine whether the Commission's factual finding—that Shelley's previous work-related injuries caused her preexisting condition—was an arbitrary or capricious finding, and second, whether the Commission was correct in refusing to apply the higher legal causation standard when Shelley's preexisting condition was work-related.

## SOURCE OF PREEXISTING CONDITION

■ Since we hold below that the higher legal standard of *Allen* does not apply when a preexisting condition is caused by prior work-related injuries previously incurred in the same workplace, we must address Fred Meyer's challenge to the commission's finding of fact regarding the cause of Shelley's preexisting condition. Fred Meyer asserts that there is no evidence in the record that Shelley's preexisting back condition is due to her previous work-related injuries. This assertion is unfounded. Fred Meyer claims that the statements of Dr. Beck, the doctor who conducted an independent medical examination of Shelley, was the only evidence as to the source of Shelley's preexisting condition. Dr. Beck indicated: "I feel that the injuries of 1975 and 1978 probably have no bearing on her long term problem." A review of the evidence before the A.L.J. reveals that Dr. Beck's conclusion did not constitute the sole evidence before the Commission regarding · the causation of Shelley's preexisting condition.

Dr. Rich, one of Shelley's treating physicians, inferred in his correspondence which was before the A.L.J. that the preexisting condition was caused by the work-related injuries. Shelley's medical records and her own testimony likewise support a finding that Shelley's previous back problems were caused by the work-related injuries inasmuch as she only experienced difficulties immediately following the injuries.

The Commission was therefore left with conflicting evidence as to the cause of the preexisting condition. It chose not to accept Dr. Beck's conclusion because he gave no explanation for Shelley's herniated disc other than her previous injuries at work. Inasmuch as there was evidence that the previous injuries could have caused Shelley's preexisting condition, a herniated disc, and inasmuch as Shelley's back problems began when she first injured her back at work, it was not arbitrary or capricious for the Commission to find that the preexisting condition was caused by the previous work-related injuries. We therefore will not disturb the Commission's factual finding as to the cause of Shelley's preexisting condition.

## LEGAL CAUSATION

■ In order to recover workers' compensation benefits, an employee must prove that she was injured "by accident arising out of or in the course of [her] employment." Utah Code Ann. § 35–1–45 (1988). "This statutory language creates two prerequisites for a finding of compensable injury. First, the injury must be 'by accident.' Second, the language 'arising out of or in the course of employment' requires that there be a causal connection between the injury and the employment." *Allen,* 729 P.2d at 18.

The Utah Supreme Court indicated in *Allen* that the purpose of requiring a claimant to prove causation is to distinguish between injuries which result from a personal risk and injuries which result from an employment risk. In other words, the goal is to distinguish between those injuries which:

(a) *coincidentally* occur at work because a preexisting condition results in symptoms which appear during working hours *without any enhancement from the workplace,* and (b) those injuries which

occur because some condition or exertion required by the employment *increases the risk of injury* which the worker normally faces in his everyday life.

*Allen*, 729 P.2d at 25 (emphasis added).

The supreme court held in *Allen* that a claimant must supply proof of both "legal" and "medical" causation. *Id.* In defining legal causation, the supreme court adopted a two-tiered approach which is dependent on whether a claimant has a preexisting condition. "[W]here the claimant suffers from a preexisting condition which contributes to the injury, an unusual or extraordinary exertion is required to prove legal causation. Where there is no preexisting condition, a usual or ordinary exertion is sufficient." *Id.* at 26.[5]

Previous workers' compensation cases interpreting *Allen* have focused on whether work-required exertions increased the risk of injury above that experienced in normal nonemployment life. *See, e.g., Nyrehn v. Industrial Comm'n*, 800 P.2d 330 (Utah Ct.App.1990). We are now asked for the first time to consider whether the higher legal causation standard of *Allen* applies when the preexisting condition resulted from work-related injuries incurred while working for the same employer.[6]

While the Utah Supreme Court did not differentiate in *Allen* between preexisting conditions caused by employment and preexisting conditions caused by other factors, the court has consistently held that the purpose of the higher legal causation standard is to separate the injuries that occur because of a personal risk from the injuries that arise because of the work environment. In *Allen*, the supreme court explained: "This extra exertion serves to offset the preexisting condition of the em-

ployee as a likely cause of the injury, thereby eliminating claims for impairment resulting from a *personal risk* rather than exertions at work." *Allen*, 729 P.2d at 25 (emphasis added). In *Price River Coal Co. v. Industrial Commission*, 731 P.2d 1079 (Utah 1986), the supreme court stated that the legal causation test "is designed to screen out those injuries that result from a *personal condition ...* rather than from exertions required of the employee in the workplace." *Id.* at 1082 (emphasis added). In *Hone v. J.F. Shea Co.*, 728 P.2d 1008 (Utah 1986) (emphasis added), the supreme court explained that we undertake the legal causation inquiry "in order to distinguish those disabilities that are more likely than not produced by a *risk related to the employment* from one that is caused by a *personal risk that an employee brings to the workplace.*" *Id.* at 1011 (emphasis added).

We reject the interpretation of *Allen* being proposed by Fred Meyer—that the higher legal causation standard applies even when the preexisting condition is the result of a previous work-related injury—because it is too prohibitive. Fred Meyer's interpretation would disqualify workers who have previously suffered work-related injuries from recovering benefits when they are subsequently reinjured in the same workplace. This was not the stated goal of *Allen*. As the supreme court reiterated, "[j]ust because a person suffers a preexisting condition, he or she is not disqualified from obtaining compensation." *Allen*, 729 P.2d at 25 (quoting *Powers v. Industrial Comm'n*, 19 Utah 2d 140, 143–44, 427 P.2d 740, 743 (1967)). The purpose of proving causation is to identify those injuries which "*coincidentally* occur at

---

**5.** Since a claimant without a preexisting condition does not need to prove anything more than medical causation, the legal causation test of *Allen* effectively only applies to claimants with preexisting conditions.

**6.** Fred Meyer claims this issue has already been addressed and relies upon two cases, *Richfield Care Center v. Torgerson*, 733 P.2d 178 (Utah 1987), and *Otvos v. Industrial Comm'n*, 751 P.2d 263 (Utah Ct.App.1988). Fred Meyer's reliance on these cases is misplaced, however, in that

they deal with apportionment of liability between the employer and the Employers' Reinsurance Fund for benefits which are awarded when there is a preexisting condition. *See* Utah Code Ann. § 35–1–69 (Supp.1990). Such apportionment occurs subsequent to the determination that benefits will be awarded and therefore is irrelevant to the inquiry of whether benefits will be awarded under *Allen*. *Nyrehn v. Industrial Comm'n*, 800 P.2d 330, 334 n. 8 (Utah Ct.App.1990).

work ... without *any* enhancement from the workplace." *Id.* (emphasis added). The *Allen* test was not meant to disqualify workers from recovering when their workplace-related preexisting conditions are subsequently aggravated by the same workplace. To adopt Fred Meyer's prohibitive interpretation of *Allen* would be contrary to our "duty ... to construe the Workers' Compensation Act liberally and in favor of employee coverage when statutory terms reasonably admit of such a construction." *Heaton v. Second Injury Fund,* 796 P.2d 676 (Utah 1990).

Had Shelley not been suffering from a preexisting condition previously incurred in the same workplace, she either would not have been injured on May 3, 1985, or she would have recovered benefits. It is not logical, nor equitable, for Shelley to be denied workers' compensation benefits when it was the workplace that increased the risk that she would be injured. We therefore conclude that because the heightened risk of injury that led to Shelley's injury on May 3, 1985, was workplace-induced, it was not the type of risk the higher legal causation standard of *Allen* was intended to avoid. The Commission was therefore correct in its legal conclusion that Shelley was not required to satisfy the higher standard when Shelley's increased risk of injury was not a personal risk brought to the workplace, but rather an employment-induced risk incurred while working for the same employer.

No other challenge being made to the Commission's order, the award of benefits is therefore affirmed. Costs on review to respondent Shelley.

GARFF and CONDER, JJ., concur.